HOUSTON, Justice
(dissenting).
Halycon Ballard was convicted of second-degree theft of property (specifically, by shoplifting) from the Robin O’Neal boutique in Mountain Brook. See Ballard v. State, 767 So.2d 1123 (Ala.Crim.App.1999), for a statement of the facts of this case.
Ballard’s son testified that, approximately a year after the shoplifting offense was alleged to have occurred, he found a paper that purported to be an invoice from the Robin O’Neal boutique and relating to the garments Ballard was alleged to have taken from the boutique. This paper was introduced by the State as Exhibit 25. The State called Dr. Richard Roper as an expert on questioned documents and handwriting, to prove that Exhibit 25 was a false invoice. During cross-examination of Dr. Roper, he was asked the following questions and he gave the following answers:
“Q. Now, there is no licensing board for the State of Alabama for document examiners, is there?
“A. No, sir.
“Q. But there is a national certification board for document examiners, isn’t there, Dr. Roper?
“A. Yes, sir, there is.
“Q. That’s the American Board of Forensic Document Examiners?
“A. That’s correct.
“Q. And you are not certified, are you?
“A. Not at this time, no, sir.
[[Image here]]
“Q. Who was your predecessor in your job?
“A. Mr. Lamar Miller.
“Q. And Mr. Lamar Miller was certified by the national board, wasn’t he?
“A. That’s correct.”
Several hours later, during redirect examination by the State, the following transpired:
“Q. Mr. Clark [defense counsel] asked you about Lamar Miller, your supervisor and the person who trained you.
“A. Yes, ma’am.
“Q. Do you recall that?
“A. Yes, ma’am.
“Q. And I believe you indicated that he is certified by the only board of forensic document examiners, the only recognized professional organization of document examiners.
“A. That’s correct.
“Q. And you are not certified by that board.
“A. Correct.
“Q. Do you still keep in touch with Lamar Miller?
“A. Yes, ma’am.
“Q. And he is now retired from the Department of Forensic Sciences; is that correct?
“A. He’s retired into private practice. Yes, ma’am.
“Q. Does that mean he still conducts document examinations just as you have done in this case?
“A. Yes, ma’am, he does.
“Q. He does that on a private basis?
“A. Yes, ma’am.
“Q. The defense in this case then could have contacted Lamar Miller to have him examine the questioned document just as you did.
*1144 “Mr. Clark: If it please the Court, we would object. Just a minute—
“Ms. Gwinn [the prosecutor]: Your Honor, I would ask—
“Mr. Clark: We have a motion to make, Your Honor.
“The Court: Wait a minute. We’ll take it up later. Go on to some other matter.
[[Image here]]
“Mr. Clark: If it please the Court, if I may before I make my motion for judgment of acquittal, we would respectfully move the Court for a mistrial based upon what we consider to be the intentional act of the prosecutor to provoke a mistrial in that she asked in the presence of the jury questions about — Well, the defense could have called Lamar Miller’ — I think she said — ‘as an expert.’
“That is a direct comment on whether the defense calls witnesses or actions that the defense might take, which is absolutely in violation of both the federal and state constitutions. And I believe that [Ms. Gwinn] knows that.
“Having done that intentionally, we would respectfully move the Court for a mistrial.”
In Drayton v. State, 596 So.2d 51 (Ala.Crim.App.1991), the defendant, in his trial for robbery in the first degree, testified that he had been coerced by means of police mistreatment into making a statement that had been introduced against him. “He further testified that two paramedics were present at the police station during the time that [he said a] police officer cursed and hit him.” 596 So.2d 51. That testimony led to this questioning by the State:
“Q. Now, did you subpoena any paramedics to come here and talk about these cuts and bruises that you had on your hands that time?
“A. Mr. Meyers [defense counsel]: Judge, I object to that.
“The Court: Overruled.
“A. No.
“Q. Yet you’re saying there were paramedics standing right there.
“A. There was paramedics, but I didn’t subpoena none of them.”
596 So.2d at 52. The Court of Criminal Appeals reversed Drayton’s conviction, holding that defense counsel’s “general objection” was sufficient to preserve error for appellate review because, the court said, “the prosecutor’s question [about the defendant’s not subpoenaing the paramedics] was clearly illegal, and there [was] no way that the question could have been framed ... to make it legal.” 596 So.2d at 52.
The general rule is that one party may not comment unfavorably on the other party’s failure to produce a witness whose testimony supposedly would be unfavorable to the first party if the witness is equally available to both parties. Davis v. State, 494 So.2d 851, 856 (Ala.Crim.App.1986); Drayton v. State, 596 So.2d 51, 52 (Ala.Crim.App.1991). “Stated differently, such [a] comment is improper when the uncalled witness was equally accessible to both parties.” Charles W. Gamble, McEl-roy’s Alabama Evidence, § 191.01(1) (5th ed. 1996).
Before the prosecutor made the challenged comment, the State had established that Miller’s testimony would have been equally available to both sides. The clear implication of the prosecutor’s comment was that Ballard could have had the questioned invoice examined by, and then could have provided testimony from, a documents examiner who had credentials superior to Dr. Roper’s credentials, but did not do so because she knew the questioned invoice had been fabricated.
The challenged sentence (“The defense in this case then could have contacted Lamar Miller to have him examine the questioned document just as you did.”) appears in the record with a period at the end, not a question mark. But it does not matter whether that sentence was a statement or a question. Comments, answers, and oth *1145 er affirmative statements are not the only means by which an objectionable thought may be verbalized. A question asked of a witness by an attorney during direct examination or cross-examination is, itself, improper if it violates the rules of evidence. See Ex parte Sparks, 730 So.2d 113 (Ala.1998). If a question is improper, it may require some kind of curative action on the part of the trial judge, or may even require a mistrial or a new trial.
The sentence objected to was error. Was it harmless error? The State contended that its Exhibit 25 was a fabricated invoice. A great deal of the trial was devoted to dealing with this exhibit. Evidence indicating that a defendant has fabricated exculpatory evidence is extremely powerful evidence of guilt. Therefore, if the jury found that the invoice was fabricated, that finding could have influenced the verdict. The effect of the prosecutor’s overreaching sentence, whether question or comment, regarding the failure of the defense to call Miller was to confirm as true the prosecution’s contention that Ballard had fabricated the invoice, for, if she had not, the' sentence suggested, then she would have called Miller as a witness. It is clear that the prosecutor’s sentence “probably injuriously affected [Ballard’s] substantial rights”; therefore, the error was not harmless. Rule 45, Ala. R.App. P. I would reverse the judgment and remand the case; therefore, I dissent.
HOOPER, C.J., concurs.